FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENISE G., | NO. 2:21-CV-0334-TOR |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 11, 12). These matters were submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **denies** Plaintiff's motion and **grants** Defendant's motion.

### JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1        **STANDARD OF REVIEW**

2        A district court's review of a final decision of the Commissioner of Social

3    Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

4    limited: the Commissioner's decision will be disturbed "only if it is not supported

5    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6    1158–59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence"

7    means relevant evidence that "a reasonable mind might accept as adequate to

8    support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated

9    differently, substantial evidence equates to "more than a mere scintilla[,] but less

10   than a preponderance." *Id.* (quotation and citation omitted). In determining

11   whether this standard has been satisfied, a reviewing court must consider the entire

12   record as a whole rather than searching for supporting evidence in isolation. *Id.*

13       In reviewing a denial of benefits, a district court may not substitute its

14   judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

15   1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

16   rational interpretation, [the court] must uphold the ALJ's findings if they are

17   supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18   F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

19   ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

20   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

1    *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

2    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

3    *Sanders*, 556 U.S. 396, 409–10 (2009).

4    **FIVE STEP SEQUENTIAL EVALUATION PROCESS**

5    A claimant must satisfy two conditions to be considered "disabled" within

6    the meaning of the Social Security Act.  First, the claimant must be "unable to

7    engage in any substantial gainful activity by reason of any medically determinable

8    physical or mental impairment which can be expected to result in death or which

9    has lasted or can be expected to last for a continuous period of not less than twelve

10   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

11   impairment must be "of such severity that [he or she] is not only unable to do [his

12   or her] previous work[,] but cannot, considering [his or her] age, education, and

13   work experience, engage in any other kind of substantial gainful work which exists

14   in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

15   The Commissioner has established a five-step sequential analysis to

16   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

17   416.920(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's

18   work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in

19   "substantial gainful activity," the Commissioner must find that the claimant is not

20   disabled.  20 C.F.R. § 416.920(b).

1    If the claimant is not engaged in substantial gainful activities, the analysis

2  proceeds to step two.  At this step, the Commissioner considers the severity of the

3  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4  "any impairment or combination of impairments which significantly limits [his or

5  her] physical or mental ability to do basic work activities," the analysis proceeds to

6  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

7  this severity threshold, however, the Commissioner must find that the claimant is

8  not disabled.  *Id.*

9    At step three, the Commissioner compares the claimant's impairment to

10  several impairments recognized by the Commissioner to be so severe as to

11  preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

12  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13  enumerated impairments, the Commissioner must find the claimant disabled and

14  award benefits.  20 C.F.R. § 416.920(d).

15    If the severity of the claimant's impairment does meet or exceed the severity

16  of the enumerated impairments, the Commissioner must pause to assess the

17  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

18  defined generally as the claimant's ability to perform physical and mental work

19  activities on a sustained basis despite his or her limitations (20 C.F.R. §

20  416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 7, 2019, Plaintiff filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of May 1, 2012. Tr. 25. The application was denied initially and upon reconsideration. *Id*. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on January 11, 2021. *Id*. During the hearing, Plaintiff amended her alleged onset date to March 7, 2019. *Id*. On February 18, 2021, the ALJ denied Plaintiff's claim. Tr. 38.

Plaintiff previously filed a Title XVI application on January 22, 2016, which was denied on November 17, 2017. Tr. 25. Plaintiff did not request a review of that decision; thus, the decision became final. *Id*. Because the current matter involves an unadjudicated period arising under the same title as Plaintiff's prior application, the prior final decision gives rise to a presumption of continued non-disability beginning November 17, 2017. Tr. 26. Plaintiff may rebut the presumption by showing a "changed circumstance indicating a greater disability" with respect to the unadjudicated period. *Id.; see Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

The ALJ found Plaintiff rebutted the presumption due to a change in Plaintiff's age category, complaints of new impairments, and an increase in

severity of Plaintiff's mental impairments.  *Id*.  Additionally, the ALJ found the record contained new evidence warranting different findings than those in the November 2017 ALJ decision.  *Id*.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 7, 2019, the amended alleged onset date.  Tr. 28.  At step two, the ALJ found Plaintiff had the following severe impairments: borderline personality disorder, major depressive disorder, post-traumatic stress disorder (PTSD), and mild marijuana and alcohol use disorder.  *Id*.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  The ALJ then found Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] cannot climb ladders, ropes or scaffolds, and should avoid all hazards.  She is able to concentrate, persist, or maintain pace for 2 hours [sic] intervals between regularly scheduled breaks, can adapt to occasional changes in her work routine, can make simple judgements [sic], should have no fast-pace [sic] production rate of work, only occasional, superficial interaction (defined as non-collaborative/no teamwork) with the public and coworkers, and would be better able to deal with things rather than people.

Tr. 30.

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work.  Tr. 36.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as Housekeeping Cleaner, Cleaner II, and Laundry Worker I.  Tr. 37.  The ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act, from March 7, 2019, through February 18, 2021, the date of the ALJ's decision.  Tr. 38.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated the severity of Plaintiff's somatoform disorder and physical impairments;

3. Whether the ALJ properly considered Plaintiff's impairments under the Listings;

4. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony; and

5. Whether the ALJ conducted an adequate step-five analysis?

ECF No. 11 at 6.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the medical opinions of Dr. Islam-Zwart, Dr. Carstens, and John Dunn, MSW. ECF No. 11 at 9–14. As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. § 416.920c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The ALJ applied the new regulations because Plaintiff filed her Title XVI claim after March 27, 2017. Tr. 34.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)–(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2). These factors are explained as follows:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. *Id*.

These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As a result, the

2    ALJ's decision for discrediting any medical opinion "must simply be supported by

3    substantial evidence."  *Id.*

4         *1.  Dr. Kayleen Islam-Zwart, Ph.D.*

5         Plaintiff alleges the ALJ erred by rejecting Dr. Islam-Zwart's medical

6    opinion regarding Plaintiff's mental health impairments and her somatic symptom

7    disorder.  ECF No. 11 at 9–10.  The ALJ found Dr. Islam-Zwart's opinion

8    unpersuasive because it was unsupported by Dr. Islam-Zwart's own exam findings

9    and inconsistent with other evidence in the record.  Tr. 35.

10        To illustrate, the ALJ found Dr. Islam-Zwart's own exam findings showed

11    Plaintiff had a score of 29/30 on the Mini-Mental Status Exam, which was above

12    the impairment cutoff (Tr. 462); had scores within the normal limit on trail

13    marking and memory testing; was able to spell forward and backward; was able to

14    recall 2/3 items; and could write simple sentences and copy geometric symbols.

15    Tr. 35 (other citations to the record omitted).  Dr. Islam-Zwart also found Plaintiff

16    had normal thought process and content, as well as normal orientation, perception,

17    memory, abstract thought, insight, and judgment.  Tr. 462–63.  These findings

18    contradicted Dr. Islam-Zwart's opinion that Plaintiff had marked limitations in

19    understanding, remembering, and persisting; maintaining regular attention;

20    adapting to changes in a work routine and communicating effectively in a work

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

environment; and maintaining appropriate behavior in any work setting.  Tr. 35.

Regarding the consistency with other evidence, the ALJ found other records reflected Plaintiff had generally unremarkable mental status exams.  *Id*.  Moreover, Dr. Islam-Zwart's opinion conflicted with the opinions of the State agency psychological consultants, who concluded Plaintiff was only moderately impaired.  *See, e.g.,* Tr. 454.  It is the ALJ's duty to resolve conflicts in the record, and where the ALJ arrives at a rational conclusion that is supported by the record, the ALJ's decision must stand.  *Andrews*, 53 F.3d at 1039; *Rollins*, 261 F.3d at 857.  The Court finds the ALJ reasonably rejected Dr. Islam-Zwart's opinion as inconsistent and unsupported by the record.  The ALJ's conclusion was supported by substantial evidence.

### 2.  Dr. Luci Carstens, Ph.D., P.S.

Plaintiff argues the ALJ erred by failing to consider the opinion of Dr. Carstens.  ECF No. 11 at 11.  Defendant concedes the ALJ erred but argues the error was harmless because Dr. Carstens merely concurred with Dr. Islam-Zwart's opinion.  ECF No. 12 at 16.

A review of Dr. Carstens' check box form indicates the opinion was based entirely on Dr. Islam-Zwart's assessment.  Tr. 550–51.  As Defendant notes, the only difference between the two opinions is Dr. Carstens' recommendation of a 24-month duration rather than the 12-month duration recommended by Dr. Islam-

1  Zwart.  *Id*.  In any event, the ALJ was not required to provide analysis for

2  "evidence that is inherently neither valuable nor persuasive," particularly evidence

3  from State agency disability examiners, such as Dr. Carstens.  20 C.F.R. §

4  416.920b(c)(2).  The ALJ explained as much in her decision.  Tr. 36.

5  Consequently, the Court finds any error in failing to address Dr. Carstens' opinion

6  was harmless and immaterial to the ALJ's ultimate determination of disability.

7      *3.  John Dunn, MSW*

8      Plaintiff argues the ALJ improperly rejected Mr. Dunn's opinion regarding

9  Plaintiff's limitations.  ECF No. 11 at 12.  Mr. Dunn opined that Plaintiff had

10  moderate to severe limitations in concentration and persistence, marked to severe

11  limitations in social functioning and adaption, and extreme limitations in her

12  abilities to interact with others, her ability to concentrate, persist, or maintain pace,

13  and her ability to adapt and manage herself.  Tr. 36.  Mr. Dunn also stated Plaintiff

14  would likely be off task more than 30% of the time and would be absent from work

15  four or more days per month.  *Id*.

16      The ALJ did not find Mr. Dunn's opinion persuasive.  *Id*.  The opinion was

17  inconsistent with other evidence in Plaintiff's record, including Mr. Dunn's own

18  treatment notes, and only somewhat supported by the evidence Mr. Dunn

19  considered.  *Id*.  For example, other treatment notes showed Plaintiff reported

20  increased symptoms with increased interpersonal stress, but Plaintiff also reported

1    overall symptom improvement with treatment. *Id*. (citations to the record omitted).

2    Additionally, Plaintiff's overall treatment was generally conservative, which was

3    inconsistent with Mr. Dunn's assessment of "extreme" limitations. *Id*. The Court

4    finds the ALJ's conclusions were reasonable and supported by substantial

5    evidence.

6    **B. Step Two Evaluation**

7        Plaintiff argues the ALJ erred in finding her somatoform disorder and

8    physical impairments as non-severe as step two. ECF No. 11 at 14. At step two of

9    the sequential process, the ALJ must determine whether a claimant suffers from a

10   "severe" impairment, i.e., one that significantly limits her physical or mental

11   ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe

12   impairment, the claimant must first prove the existence of a physical or mental

13   impairment by providing medical evidence consisting of signs, symptoms, and

14   laboratory findings; the claimant's own statement of symptoms alone will not

15   suffice. 20 C.F.R. § 416.921.

16       An impairment may be found non-severe when "medical evidence

17   establishes only a slight abnormality or a combination of slight abnormalities

18   which would have no more than a minimal effect on an individual's ability to work

19   . . . ." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3. Similarly, an

20   impairment is not severe if it does not significantly limit a claimant's physical or

mental ability to do basic work activities, which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.922; *see also* SSR 85-28.

Step two is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff contends the ALJ erred by failing to find her cervical radiculopathy, chronic pain syndrome, thoracic strain, and somatoform disorder as severe.  ECF No. 11 at 15.  The ALJ did not address Plaintiff's cervical radiculopathy or thoracic strain at step two.  However, the Ninth Circuit has held when an ALJ resolves step two in a claimant's favor, any error in omitting a specific impairment does not prejudice the claimant at step two.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Here, step two was resolved in Plaintiff's favor, thus, she was not

prejudiced by the ALJ's findings.

As to Plaintiff's allegations of chronic pain, the ALJ found the medical evidence did not include any anatomical, physiological, or psychological abnormalities that would permit a finding of a medically determinable impairment. Tr. 29. Specifically, the records did not reflect any weakness, headache, or numbness/tingling and showed normal gait. *Id.* The only positive finding for pain was subjective pain to palpation in Plaintiff's trapezius. *Id.*

The ALJ rejected the somatic symptom disorder for similar reasons. Tr. 28–29. In particular, the ALJ concluded the evidence did not establish an impairment that had anything more than a slight or minimal effect on Plaintiff's ability to perform work activities. *Id.* Moreover, the limiting effects did not meet the durational requirement for a disability finding. *Id.* Other than a single mention of the somatic symptoms in one visit, Plaintiff was never diagnosed with ongoing symptoms of somatic disorder. *Id.* Finally, Plaintiff's complaints of headache symptoms only began in November 2020. *Id.*

The Court finds the ALJ's conclusions as step two were supported by substantial evidence and free from harmful error.

**C. Listings Analysis**

Plaintiff argues the ALJ erred in failing to consider Listing 12.07 or the combined effects of Plaintiff's impairments. ECF No. 11 at 16.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    At step three, the ALJ first determines whether a claimant's impairment

2   meets or equals an impairment in the Listing of Impairments (the "Listings").  *See*

3   20 C.F.R. § 416.920(a)(4)(iii).  The Listings describe specific impairments that are

4   recognized as severe enough to prevent a person from engaging in substantially

5   gainful activities.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Each impairment is

6   described using characteristics established through "symptoms, signs and

7   laboratory findings."  *Tackett*, 180 F.3d at 1099.

8    To meet an impairment, a claimant must establish she meets each of the

9   characteristics of the listed impairment.  *Id*.  To equal an impairment, a claimant

10   must establish symptoms, signs, and laboratory findings "at least equal in severity

11   and duration" to the characteristics of the listed impairment, or, if a claimant's

12   impairment is not listed, to the impairment "most like" the claimant's own.  *Id*.  If

13   a claimant meets or equals one of the listed impairments, the claimant will be

14   considered disabled without further inquiry.  *See* 20 C.F.R. § 416.920(d).

15   However, "[a]n impairment that manifests only some of those criteria, no matter

16   how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

17    Plaintiff alleges the ALJ failed to consider "any of the most severe findings

18   concerning [Plaintiff's] mental health and somatic symptoms."  ECF No. 11 at 16.

19   She does not specifically challenge the ALJ's assessment of the paragraph B or

20   paragraph C criteria.  Rather, Plaintiff simply offers her own interpretation of the

evidence.  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679 (citation omitted).  Conversely, the ALJ cites to numerous records to support her finding that Plaintiff's symptoms did not satisfy either paragraph's criteria.  Tr. 29–30 (citations to the record omitted).

As to Listing 12.07 (somatic symptom and related disorders), the ALJ concluded at step two that Plaintiff's alleged somatoform impairment was insufficiently severe to be considered a medically determinable impairment because there were no medical records to support the required duration.  Tr. 28–29.  Thus, Plaintiff cannot establish at step three that her somatic symptoms meet or equal the requirements of Listing 12.07 where there are no supporting medical documents.  The Court finds the ALJ's conclusions at step three were reasonable and supported by substantial evidence.

**D. Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit her symptom testimony.  ECF No. 11 at 17.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location,

duration, frequency, and intensity of pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; (5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; (6) any measures other than

treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions

due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7–8; 20 C.F.R.

§ 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found Plaintiff's impairments could reasonably be expected to

cause the alleged symptoms; however, Plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely

consistent with the evidence.  Tr. 34.  In arriving at this conclusion, the ALJ

considered several of the factors described above.

### 1. Daily Activities

First, the ALJ considered Plaintiff's reported daily activities and found they

were incompatible with the alleged severity of Plaintiff's symptoms.  Tr. 34.  For

example, Plaintiff claimed debilitating mental health symptoms but also stated that

1   she cared for pet goats, a cat, and chickens, and was able to care for personal

2   needs, such as preparing meals and doing household chores. *Id*. Plaintiff stated

3   she could drive and goes shopping in stores. *Id*. Plaintiff also indicated she

4   occasionally did crafts or sewing, watched television, and cooked for pleasure. *Id*.

5   Plaintiff stated she was able to live independently. *Id*. While the Ninth Circuit has

6   cautioned against reliance on "certain daily activities, such as grocery shopping,

7   driving a car, or limited walking for exercise" to discount a plaintiff's symptom

8   allegations, the ALJ here considered other factors and found additional reasons for

9   discrediting Plaintiff's subjective symptom testimony. *Vertigan v. Halter*, 260

10   F.3d 1044, 1050 (9th Cir. 2001).

11       *2. Conservative Treatment*

12       Next, the ALJ noted Plaintiff's treatment for her symptoms was conservative

13   in nature, consisting primarily of some medication and therapy. Tr. 34. The Ninth

14   Circuit has held "evidence of conservative treatment is sufficient to discount a

15   claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481

16   F.3d 742, 751 (9th Cir. 2007) (internal quotations omitted). There was no evidence

17   that Plaintiff required emergency interventions or inpatient hospitalizations. Tr.

18   34. Moreover, the ALJ noted Plaintiff's symptoms improved when she followed

19   the prescribed treatment recommendations. *Id*. (citations to the record omitted).

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1

   *3.   Intensity, Duration, and Frequency*

2      Finally, the ALJ noted Plaintiff's reports to care providers were inconsistent

3   with the alleged severity of her symptoms.  For example, in September 2019,

4   Plaintiff reported a history of various psychological disorders but also reported she

5   was "doing better than she used to."  Tr. 32.  In October 2019, Plaintiff reported

6   sleeping well and denied having anxiety or depression.  *Id*.  In January 2020,

7   Plaintiff again stated she had a history of psychological disorders but was not

8   taking medication at the time and had not attended counseling for quite some time.

9   Tr. 33.

10      The inconsistencies between Plaintiff's claimed severity of her symptoms

11   and the overall record evidence support the ALJ's decision to discredit Plaintiff's

12   symptom testimony.  The ALJ cited to numerous documents in the record to

13   support the finding.  Accordingly, the Court finds the ALJ's findings were

14   reasonable and supported by substantial evidence.

15   **E.  Step Five Analysis**

16      Plaintiff challenges the ALJ's findings at step five, arguing the ALJ relied on

17   an incomplete hypothetical.  ECF No. 11 at 20.  If a claimant cannot perform his or

18   her past relevant work, at step five the ALJ must show there are a significant

19   number of jobs in the national economy the claimant is able to do.  *Tackett*, 180

20   F.3d at 1098–99; 20 C.F.R. § 416.920(d)–(e).  To do so, the ALJ may employ the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

testimony of a vocational expert. *Tackett*, 180 F.3d at 1100–01; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000). The ALJ's findings will be upheld if the weight of medical evidence in the record supports the hypothetical posed by the ALJ. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony will qualify as substantial evidence if it is reliable. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Here, the hypothetical posed to the vocational expert asked the expert to consider a claimant with Plaintiff's age, education, work experience, and residual functional capacity to perform light work with the following additional limitations:

> [S]he cannot climb ladders, ropes or scaffolds, and should avoid all hazards. She is able to concentrate, persist, or maintain pace for 2 hours intervals [sic] between regularly scheduled breaks, can adapt to occasional changes in her work routine, can make simple judgements [sic], should have no fast-pace [sic] production rate or work, only occasional, superficial interaction (defined as non-collaborative/no teamwork) with the public and coworkers, and would be better able to deal with things rather than people.

Tr. 30, 110–11. The vocational expert testified that the hypothetical individual would be able to perform the following representative occupations: Housekeeping Cleaner with approximately 3,800,000 jobs in the national economy; Cleaner II with approximately 217,000 jobs in the national economy; and Laundry Worker I with approximately 116,000 jobs in the national economy. Tr. 37, 111–12.

Plaintiff argues the hypothetical was incomplete because it did not account

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

for the time Plaintiff would be absent from work, off task, unable to sustain an ordinary routine, or need to lie down.  ECF No. 11 at 21–22.  Plaintiff does not cite to any evidence in the record to support her assertion that these limitations should have been included.  Having determined the ALJ's findings with regard to Plaintiff's alleged impairments were all supported by substantial evidence, the Court concludes the ALJ carried her burden to prove Plaintiff retains the residual functional capacity to perform certain jobs in the national economy.  The ALJ's conclusion is supported by substantial evidence.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 12) is

    **GRANTED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED August 4, 2022.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24